UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:23-cr-00008-SDN-1 |
| JEFFERY GRAY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **<u>OMNIBUS ORDER</u>**

On April 14, 2025, Defendant Jeffery Gray pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C §§ 2252A(a)(5)(B) and (b)(2) and was sentenced to 120 months of imprisonment and a lifetime term of supervised release. ECF No. 143. Mr. Gray has filed a notice of appeal, which remains pending before the First Circuit. ECF No. 147. On December 15, 2025, Mr. Gray moved for (1) compassionate release; (2) appointment of new substitute counsel; and (3) an order of relief to supplement the record on appeal. ECF Nos. 203–05.

In the weeks since these initial motions, this Court has received numerous additional motions, the accompanying responses, and further replies to said responses. Since the initial December 15, 2025, motion, the total number of motions requesting court-ordered relief has ballooned to over twenty-five, with the Government's responses and Mr. Gray's replies further inflating the number of filings. Given the volume of filings and the overlap between the issues presented, the Court in this order will be grouping the filings into six sections: (1) motions for appointment/substitution of counsel; (2) motions

1

for discovery; (3) motions for oral argument/evidentiary hearings; (4) motions for protective orders to seal; (5) a motion for compassionate release; and (6) a motion for release pending appeal.

The Court recognizes the deadlines for responses and replies for more recent motions have not yet lapsed. However, the Court in its discretion takes these motions under advisement and resolves them in this Order for the purpose of reestablishing control over the Court's docket and clarifying the status of this case.

For the reasons stated below, the Court **DENIES** without prejudice Mr. Gray's motion for compassionate release, ECF No. 203; **DISMISSES AS MOOT** Mr. Gray's motion for order of relief to supplement the record on appeal, motions to extend time to reply, and motion for leave to file, ECF Nos. 205, 218, 242, 259; and **DENIES** Mr. Gray's motions for appointment of counsel, motions for oral argument, motion for release pending appeal, motions for protective orders to seal, and motions for discovery, ECF Nos. 204, 206, 207, 212, 214, 215, 216, 226,232, 233, 234, 239, 243, 244, 250, 252, 257, 263, 264.

In the intervening days since the drafting of this order, Mr. Gray has filed a motion for a directive order, namely a "case management" directive order to restore Mr. Gray's ability to call the office of the Clerk of Court. Mr. Gray has identified no basis for the relief requested; therefore the Court also **DENIES** this motion. ECF No. 265.

### I.    Motions for Appointment/Substitution of Counsel

In his motions for appointment of substitute counsel and subsequent replies, Mr. Gray requests the Court formally terminate the late Joel Vincent, Esq.,[1] as Mr. Gray's

---

[1] Attorney Joel Vincent passed away on September 8, 2025. ECF No. 208 at 1 n.1.

court-appointed counsel and appoint new counsel in Attorney Vincent's stead. ECF Nos. 204, 206, 212, 214, 234. Mr. Gray argues appointment of substitute counsel is necessary to recover and gain custody of case files, personal files, and previously seized property still in "possession" of Attorney Vincent. ECF No. 234 at 1–5. Mr. Gray acknowledges that defendants filing "post-appeal" motions are not entitled to representation but distinguishes his Motion for Compassionate Release as a "'pre-appeal' motion filed 'throughout first direct appeal.'" ECF No. 240 at 11. Mr. Gray contends "[his] right to counsel remains intact, so long as his first direct appeal remains pending, and [he] enjoys that right not only in the court of appeals, but also in this district court at this time." *Id*. at 12.

In its opposition, the Government argues Mr. Gray's request for counsel is "neither constitutionally nor statutorily required." ECF No. 208 at 3. The Government contends the right to court-appointed counsel extends to the first appeal of right and not to discretionary postconviction motions and asserts Mr. Gray has not met his burden of showing that appointment of counsel in a postconviction proceeding is warranted under the three-part *Mala* standard as the First Circuit requires. *Id*. at 4 (citing *United States v. Mala*, 7 F.3d 1058, 1063–64 (1st Cir. 1993)). The Government argues that because Mr. Gray is currently represented by counsel on appeal, "[i]nsofar as Gray suggests that he needs the assistance of court-appointed counsel, he already has court-appointed counsel available to assist him." ECF No. 238 at 1. Additionally, the Government contends caselaw does not support Mr. Gray's overarching claim of appointment of new counsel for "simultaneous representation" in both the district and appellate courts. *Id*. Finally, the Government contends that because Mr. Gray filed his notice of appeal to the First Circuit, this District Court is divested of jurisdiction over "those aspects of the case involved in

3

the appeal," ECF No. 208 at 2 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)), and, therefore, this Court lacks the jurisdiction to rule on the motions for which Mr. Gray asserts he requires counsel.

### A. Legal Standard

Criminal defendants are entitled to court appointed counsel "at every stage of the proceeding from initial appearance through appeal." Fed. R. Crim. P. 44(a). However, in postconviction proceedings, defendants have no automatic right to counsel, *see Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions and we decline to hold so today.") (internal citation omitted)); *United States v. Ringer*, No. 18-cr-00182, 2023 WL 6961854, at *1 (D. Me. Oct. 20, 2023), and the determination to appoint in such instances rests in the discretion of the Court, *see Dirring v. United States,* 353 F.2d 519, 520 (1st Cir. 1965).

The First Circuit uses the three-part test from *United States v. Mala* to decide whether counsel should be appointed. A defendant must demonstrate (1) a fair likelihood of success on the constitutional claim, (2) that the claim presents factual complexity and legal intricacy, and (3) that the facts remain largely undeveloped while the incarcerated, indigent appellant faces significant barriers to investigation. *Mala*, 7 F.3d at 1063–64 (footnotes omitted). This Court has repeatedly applied the *Mala* standard when assessing requests for counsel in postconviction proceedings. *See, e.g.*, *Ringer*, 2023 WL 6961854, at *1 (D. Me. Oct. 20, 2023) (denying motion to appoint counsel for compassionate release motion due to lack of a legally intricate issue).

**B. Analysis**

The Court is not persuaded by Mr. Gray's arguments in favor of affording him "dual representation" both in the First Circuit and this Court. Mr. Gray cites to no authority recognizing a right to simultaneous court-appointed counsel at both levels. The Court also rejects his semantic claim that he is entitled to counsel "through appeal" because his appeal remains pending, and these motions therefore are not "post-appeal." Neither the Sixth Amendment nor 18 U.S.C. § 3006(1)(A), which he cites, provides a right to appointed counsel for both the direct appeal at the circuit court level and postconviction motions in the district court level, challenging the same sentence.

Mr. Gray argues his incarceration limits his ability to develop the factual basis of his claims, particularly because he lacks access to case materials previously held by late Attorney Vincent. Appellate counsel, however, will be able to obtain the documents related to the underlying appeal and can share those with Mr. Gray. Furthermore, motions for compassionate release do not typically present factual or legal complexity sufficient to warrant appointment of counsel. *See Ringer*, 2023 WL 6961854, at *1 ("Whether Defendant ultimately is entitled to a reduced sentence turns not on arcane legal tests, but on the straightforward determination of whether the hardship that Defendant faces outweighs the harms to society—both concrete and abstract—of cutting short the sentence of incarceration so soon after it was imposed."). Given the nature of the motion and the fact Mr. Gray already benefits from court-appointed counsel for his pending appeal on the same conviction and sentence, the Court concludes that "appointment of counsel would not provide meaningful assistance to Defendant." *United States v. Perez-Crisostomo*, No. 16-cr-0008, 2023 WL 3821098, at *5 (D. Me. June 5, 2023).

5

## II.    Motions for Discovery

In his motions requesting discovery and copies of certain documents, Mr. Gray asks for a variety of different documents to be sent to him, including: two Government status reports regarding Mr. Gray's seized property, all of Mr. Gray's Bureau of Prison ("BOP") records in the Government's possession, all of the trial transcripts from his 2012 New Hampshire trial used as exhibits in his initial sentencing, the presentence investigation report, a copy of the current docket, the Government's sentencing memorandum, Mr. Gray's objections to the presentence investigation report, and the Government's Version of the Offense. ECF Nos. 205, 216, 239. Mr. Gray requests these documents to supplement his motions for compassionate release and release pending appeal and to demonstrate his "actual innocence" of his 2012 New Hampshire conviction for aggravated sexual assault. ECF No. 239 at 5.

Following the filing of these motions, the Government responded with two primary arguments: (1) the Government has complied with the requests, rendering the motions moot; and (2) Mr. Gray has cited no legal authority entitling him to the requested discovery. ECF Nos. 209, 236, 247, 248. The Government states it emailed the status reports at issue to Attorney Vincent and they are already included in the record on appeal, rendering Mr. Gray's request moot. ECF No. 209 at 1. Furthermore, the Government has mailed the BOP records in its possession to Mr. Gray and asserts it has not received and therefore is not in possession of the medical records Mr. Gray requested as part of his BOP records. ECF No. 236 at 1. Finally, the Government asks the Court to deny the motions because Mr. Gray has not shown a good-faith effort to work with court-appointed appellate counsel to obtain the documents or complied with the Court's directives

6

regarding how pro se parties may obtain documents.[2] Mr. Gray responds to the Government's opposition and their delivery of BOP records in their possession by requesting the "complete" copy of his BOP records to supplement his pending motions for compassionate release and release pending appeal. ECF No. 243.

### A. Legal Standard

*Brady* requires the disclosure by the Government of any exculpatory evidence which is "material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, courts have long held that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *United States v. Rivera-Hernandez*, 497 F.3d 71, 79 (1st Cir. 2007) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). The Supreme Court also expressly held that *Brady* does not apply to a postconviction proceeding because "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Tevlin v. Spencer*, 621 F.3d 59, 70 (1st Cir. 2010) (quoting *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009)).

Federal Rule of Criminal Procedure 16 governs discovery in criminal cases. Rule 16 authorizes only pretrial discovery and does not create a right to postconviction discovery. *See United States v. Nobles*, 422 U.S. 225, 235 (1975) (interpreting Rule 16's language and history as addressing only pretrial discovery); *United States v. Astacio-Espino*, No. CR 12-200, 2017 WL 11527889, at *2 (D.P.R. Feb. 13, 2017) (holding criminal defendants have neither a general constitutional right nor Rules-based right to postconviction

---

[2] Many of the documents Mr. Gray seeks are public filings that he may obtain following established procedures for pro se individuals. He has not shown why he should be exempt from following these directives.

discovery for a motion for a new trial); *United States v. Gadson*, No. 19-CR-00122, No. 21-CR-00163, 2025 WL 1000991, at *5 (D. Me. Apr. 3, 2025) (applying *Astacio-Espino* and denying discovery for motion for compassionate release).

## B. Analysis

Mr. Gray seeks discovery to supplement his motions for compassionate release and release pending appeal. Defendants do not have a freestanding right to postconviction discovery. *See Osborne*, 557 U.S. at 72–74. Mr. Gray has cited no caselaw establishing a right to discovery in connection with a motion for compassionate release or release pending appeal. *See Gadson*, 2025 WL 1000991, at *5 ("[Defendant] points to no caselaw showing he is entitled to discovery on a motion for compassionate release, and the Court is aware of none."). Furthermore, the Government largely has cooperated with Mr. Gray's requests by either directing him to materials already sent or taking steps to provide them.

Because the Government maintains it has provided to Mr. Gray all of the BOP records in its possession and the record shows Mr. Gray's appellate counsel has the status reports Mr. Gray requests, those requests are **DENIED AS MOOT**. As to Mr. Gray's remaining requests regarding all of the trial transcripts from his 2012 New Hampshire trial used as exhibits in his initial sentencing, the presentence investigation report, the Government's sentencing memorandum, Mr. Gray's objections to the presentence investigation report, and the Government's Version of the Offense, Mr. Gray has cited no legal authority that supports his right to discovery of such documents or why he is not be able to get any such public documents following established directives. As such, the Court **DENIES** his motions for discovery of those items and encourages him to engage with appellate counsel to obtain case documents.

8

### III.      Motions for Oral Argument/Evidentiary Hearing

Mr. Gray moves for an evidentiary hearing and oral argument on his Motions for Compassionate Release and Reduction in Sentence, ECF Nos. 215, 233, 245, which the Government opposes, ECF No. 235.

Evidentiary hearings for postconviction motions are the "exception, not the rule" and a "defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Thus, a party seeking an evidentiary hearing must carry "a fairly heavy burden" of demonstrating the need for special treatment. *Id*. The test for whether this heavy burden has been met is straightforward: "did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" *United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir. 1990). Mr. Gray cites to *United States v. Padilla*, 415 F.3d 211, 223 (1st Cir. 2005), and Federal Rule of Criminal Procedure 32.1(c) in support of his argument, but both cites are misplaced. They each concern motions related to supervised release, and Mr. Gray is not seeking a modification to the term of his supervised release.

Mr. Gray has identified no "basis for a hearing on the motion, such as a disputed material issue of fact." *United States v. Sepulveda*, 34 F.4th 71, 77 (1st Cir. 2022). Mr. Gray's motions can be addressed on the papers. As such, the Court **DENIES** his motions for an evidentiary hearing and oral argument.

### IV.      Motions for Protective Order to Seal

Mr. Gray moves for the Court to enter protective orders, ECF Nos. 250, 264, to permanently seal the Government's Response in Opposition to Defendant's Motion for Release Pending Appeal, ECF No. 223, and the Cover Sheet for Additional Information attached to ECF No. 264. Mr. Gray specifically seeks to seal the entire document of the

9

Government's response at ECF No. 223 or have the Government provide a redacted version which redacts information on pages 6 through 8 that refer to Mr. Gray's prior criminal convictions. ECF No. 250 at 2. Mr. Gray argues the information in the Government's filing impermissibly implicates his and his family's privacy interests. *Id*. at 5–6. Mr. Gray cites *United States v. Kravetz* to argue that despite the presumption of the public's right to access, his and his family's privacy rights are among the "countervailing interests" capable of overwhelming the presumption and defeating access. *Id*. at 5 (quoting *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013)). Furthermore, Mr. Gray argues the information disclosed in the filing is impermissible under the Local Rules, citing District of Maine Local Rule 157.6(a)(8), which dictates that presentence investigation reports, the cited source of the information in the Government's filing, remain sealed until further order of the Court. ECF No. 250 at 7. Finally, Mr. Gray cites BOP policy making the document contained within the Cover Sheet at ECF No. 264 "confidential" and accessible only to himself, the Government, and the Court as good cause to permanently seal that document. ECF No. 264.

The Government opposes the initial motion to seal its response in opposition. ECF No. 260. Its argument is twofold. First, the Government argues Mr. Gray put his criminal history at issue by claiming "[t]here is no evidence in this case [that he] posed a risk of danger to any one particular person or the community at large" in his motion for release pending appeal. *Id*. at 1 (quoting ECF No. 207 at 14). Once at issue, the Government contends it is allowed to rebut the claim by relying on "judicial records" to which the "common law right of access applies." *Id*. (quoting *Kravetz*, 706 F.3d at 54). Per the Government's argument, only the "most compelling reasons" justify non-disclosure of such judicial records. *Id*. (quoting *Kravetz*, 706 F.3d at 59). Second, the information

10

present in the document at issue, the third amended revised presentence investigation report, is (1) already public record and (2) relevant to determining whether Mr. Gray is a danger to the community. *Id*. at 2.

### A. Legal Standard

Federal Rule of Criminal Procedure 49.1(e) provides the Court may by order require redaction of additional information or limit or prohibit nonparty access to a document filed with the Court. Fed. R. Crim. P. 49.1(e). The Court may only do so on a showing of "good cause." *Id*. However, "[c]ourts long have recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *In re Providence J. Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). This principle has given rise to the presumption that the public has a right to access "judicial records." *Id*. Judicial records are "those materials on which the court relies in determining the litigants' substantive rights." *Kravetz*, 706 F.3d at 54 (quoting *Providence J. Co.*, 293 F.3d at 9–10). "'[O]nly the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access." *Id*. at 59 (quoting *Providence J. Co.*, 293 F.3d at 10).

When deciding whether "compelling reasons" have been shown, the First Circuit directs the Court to weigh certain factors. Specifically, the privacy rights of participants and third parties can "limit the presumptive right to access to judicial records." *Id*. at 62 (quotation modified). Courts should also "consider the degree to which the subject matter is traditionally considered private rather than public." *In re Bos. Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003) (quotation modified).

## B. Analysis

As a preliminary matter, the Court must determine whether the document Mr. Gray seeks to seal constitutes a "judicial record." The Court concludes it does. Courts typically rely on memoranda of law, such as the Government's opposition, when adjudicating the substantive rights of litigants, which makes such filings quintessential judicial records. Therefore, the core question is whether Mr. Gray's privacy interests—specifically his concern over disclosure of personal information contained in the Government's opposition—provide a sufficiently "compelling reason" to defeat the presumption of public access to judicial records.

Although the privacy rights of litigants and third parties may limit the presumptive right of public access, the Court first assesses whether the subject matter is traditionally public or private. In *Kravetz*, the First Circuit identified examples that weigh against public access, such as "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *Kravetz*, 706 F.3d at 62 (quotation modified). Mr. Gray emphasizes family affairs and embarrassing conduct in the information he seeks to shield. ECF No. 250 at 6. The Court disagrees with this implicit characterization that the information is private. The information Mr. Gray seeks to seal concerns prior criminal convictions already reflected in the public record. *See Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 506 n.17 (1st Cir. 1989) (observing prior publicity weighs heavily against sealing). The Government's submission is directly relevant to the Court's consideration of Mr. Gray's motion for release pending appeal and does not involve the kind of private matters traditionally protected from public view. These factors weigh strongly against sealing. Regarding the document contained within the Cover Sheet, ECF No. 264, Mr. Gray has not provided a

sufficient compelling reason to defeat the presumption of public access to judicial records outside of an allusion to "BOP" policy.

For these reasons, the Court **DENIES** Mr. Gray's motions for a protective order sealing the Government's Response in Opposition to Defendant's Motion for Release Pending Appeal and the Cover Sheet. ECF Nos. 250, 264.

### V.     Motion for Compassionate Release

In his motion for compassionate release, Mr. Gray seeks a reduction of his sentence and release under the same conditions of supervised release imposed at his original sentencing. ECF No. 203. Mr. Gray describes a variety of chronic health issues—urinary and bowel incontinence, back pain, radiculopathy in three limbs, heart disease, PTSD, ADD, ulcers, sleep apnea, diabetes, and severe dental issues—and claims that Federal Medical Center ("FMC") Devens has failed to provide adequate medical care. *See id*. at 2–7. Mr. Gray asserts facility staff have denied him needed surgery and medication, failed to obtain his VA health records, and blocked him from seeing his VA doctor. *Id*. at 6–7. Mr. Gray argues he satisfied the required administrative exhaustion as he submitted his request for compassionate release to Warden F.J. Bowers on October 24, 2025, and as of December 8, 2025, has not yet received any response. *Id*. at 8. Mr. Gray further states he is willing to comply with all conditions of supervised release imposed on him by the sentencing court and, if required, home confinement in Maine. *Id*. at 8–9.

The Government opposes the motion, arguing the Court lacks jurisdiction due to Mr. Gray's three pending appeals in the First Circuit, including one challenging the judgment and sentence of this Court's original judgment. ECF No. 213 at 1.

In his reply, Mr. Gray argues that although the Court cannot grant the requested relief during his appeals, it may issue an indicative ruling under Federal Rule of Criminal

13

Procedure 37. ECF No. 222 at 6–7, 14. He further contends that his untreated sleep apnea and other medical issues constitute "extraordinary and compelling reasons" for release. *Id.* at 10–11 (citing *United States v. Burgos-Montes*, 142 F.4th 48, 59 (1st Cir. 2025) (district court finding that defendant received adequate treatment for his sleep apnea was clearly erroneous)).

## A. Legal Standard

Under 18 U.S.C. § 3582(c), a court may not modify a term of imprisonment except in narrowly defined circumstances. *See United States v. Mercado-Flores*, 872 F.3d 25, 28 (1st Cir. 2017). The compassionate release exception permits such modification when the defendant "(1) has exhausted his administrative remedies, . . . when (2) extraordinary and compelling reasons warrant such a reduction, and (3) when the sentencing factors set forth in 18 U.S.C. § 3553(a) counsel in favor of a reduction." *United States v. Rodriguez-Pena*, 108 F.4th 12, 17 (1st Cir. 2024) (quotation modified).

Once a notice of appeal is filed, the district court loses jurisdiction "over those aspects of the case involved in the appeal." *Colón-Torres v. Negrón-Fernández*, 997 F.3d 63, 74 (1st Cir. 2021) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Under Federal Rule of Criminal Procedure 37, where jurisdiction has been divested, the Court may defer consideration, deny the motion, or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

## B. Analysis

The parties do not dispute this Court currently lacks jurisdiction to grant compassionate release because Mr. Gray's appeals challenge his original judgment and

sentence. ECF No. 213 at 1; ECF No. 222 at 4. Accordingly, the Court is divested of jurisdiction over those matters until Mr. Gray's appeals are resolved.

Mr. Gray's reliance on *United States v. Maldonado-Rios* is misplaced. In that case, the First Court reviewed an erroneously entered order granting compassionate release, not a motion for compassionate release still under consideration. *United States v. Maldonado-Rios*, 790 F.3d 62, 64–65 (1st Cir. 2015). Here, the Court also has discretion to defer consideration or deny the motion. While the medical conditions Mr. Gray describes are extensive, because Mr. Gray has not presented sufficient evidence to substantiate these medical claims or his asserted lack of care to establish extraordinary and compelling circumstances under 18 U.S.C. § 3582(c), an indicative ruling at this stage would be premature.

Because the Court presently lacks jurisdiction and Mr. Gray's motion is unsupported by sufficient evidence, the Court **DENIES** without prejudice Mr. Gray's Motion for Compassionate Release. Mr. Gray may renew his motion after his appeals conclude, supported by sufficient evidence demonstrating his medical conditions meet the statutory requirements for compassionate release.

## VI.    Motion for Release Pending Appeal

Mr. Gray further seeks release from confinement while his appeal of the original conviction remains pending. ECF No. 207. In support of his motion, Mr. Gray advances two primary arguments: (1) there is a reasonable likelihood of success on appeal, and (2) he poses no risk of danger to any person or the community. *Id*. at 13–14. For his first argument, Mr. Gray argues the sentencing court's reliance on *United States v. Acosta* to treat his 2012 New Hampshire conviction for aggravated sexual assault as a sentencing enhancer was "misplaced." *Id*. at 7. Mr. Gray contends that subsequent case law

15

establishes that a state conviction subject to a "collateral challenge"—such as a habeas petition—is not "final" and therefore cannot enhance a federal sentence. *Id*. at 8–9. Regarding his second argument, Mr. Gray asserts that by imposing supervised release conditions, the sentencing court made an implicit finding that he does not pose a danger to others if he remains compliant with those conditions. *Id*. at 2. He further argues he was not deemed a flight risk during pretrial detention and, because he possessed but did not produce or distribute child sexual abuse materials ("CSAM"), he is not a danger to any individual or the community. *Id*. at 13–14.

The Government opposes Mr. Gray's motion for release, arguing he has failed to satisfy either prong of 18 U.S.C. § 3143, which requires a defendant seeking release to show (1) by clear and convincing evidence that he will neither flee nor pose a danger to the safety of the community if released, and (2) that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, new trial, sentence reduction, or a sentence without imprisonment. ECF No. 223 at 3–4; *see* 18 U.S.C. § 3143(b).

First, Mr. Gray asserts there is "no evidence" he poses a danger to the safety of others or the community. ECF No. 207. In response, the Government cites multiple aggravating factors considered at sentencing, including Mr. Gray's history of violent conduct toward women—a 1998 assault on his then-wife, a 2003 incident in which he restrained a victim and struck her son, and a 2012 aggravated sexual assault on a pregnant woman. ECF No. 223 at 6–7.[3] The Government argues this history demonstrates Mr. Gray is a "hands-on offender" who continues to pose a serious threat. *Id*. at 8. The Government

---

[3] During the latter 2012 offense, Mr. Gray "snapped," took the victim's phone, demanded sex, punched and urinated on her, and repeatedly sexually assaulted her. ECF No. 223 at 7.

also highlights the lasting trauma of child sexual abuse victims whose images of abuse are distributed to refute Mr. Gray's claim that his conduct as a "mere possessor" of CSAM reflects minimal danger. *Id*. at 5–6. Accordingly, the Government asserts Mr. Gray has not met his burden under the first prong, as his criminal history illustrates an ongoing risk to the safety of the community, including women and children. *Id*. at 8.

Second, the Government argues Mr. Gray's appeal does not raise a "substantial question of law" likely to result in reversal, and further any alleged sentencing error was harmless. *Id*. In support of this argument, the Government cites the Court's statement at sentencing that "a ten-year sentence is the right sentence here, and it doesn't matter . . . that it was a mandatory minimum or not." *Id*. at 9 (quoting ECF No. 168 at 82). The Government argues this statement indicates that Mr. Gray would have received the same sentence regardless of whether the Court chose to apply an enhancement based on his prior 2012 conviction for aggravated sexual assault. *Id*. Accordingly, the Government asserts Mr. Gray has failed to prove the alleged sentence error was not harmless and has thus not satisfied the second prong under 18 U.S.C. § 3143. *Id*. at 10.

### A. Analysis

Under 18 U.S.C § 3143(b), a defendant seeking release pending appeal must demonstrate to (1) by clear and convincing evidence that they will neither flee nor pose a danger to the safety of any person of the community if released, and (2) that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal or a modified sentence without imprisonment. *See* 18 U.S.C. § 3143(b).

As to flight risk, the Court concludes that the record is insufficient to indicate Mr. Gray is likely to flee. The Government does not argue otherwise, and the record reflects that Mr. Gray was not deemed a flight risk at his detention hearing. ECF No. 207 at 13.

17

Mr. Gray also grounds much of his request for release in his need for ongoing medical treatment, which weighs against a finding that he is likely to abscond. *Id.* at 14. Given the portion of his sentence already served and the likely timing of the appellate process, Mr. Gray does not face the kind of unserved term that typically creates an elevated risk of flight. *See United States v. Farlow*, 824 F. Supp. 2d 189, 193 (D. Me. 2011) (finding that significant terms of remaining incarceration create an "elevated flight potential"). On this record, the Court finds Mr. Gray has satisfied the first prong as to risk of flight.

The analysis differs sharply, however, with respect to dangerousness. Mr. Gray claims there is no evidence he poses a danger to any person or the community, but the sentencing record demonstrates the opposite. The sentencing Court previously found Mr. Gray's history of domestic violence, stalking, assault, and violation of a protection order—together with his 2012 conviction—demonstrates that he is a "hands-on offender." *See* ECF No. 168 at 80:7–10. The pattern of violence against women reflected in his criminal history is serious, and Mr. Gray offers no persuasive basis to mitigate the weight of that history in his present motion.

Mr. Gray's argument that he merely possessed, but did not produce or distribute, CSAM also fails to diminish his dangerousness. As the Court noted at sentencing, possession itself perpetuates the ongoing exploitation and trauma of the child victims whose abuse is depicted. *Id.* at 79:4–18. The volume and nature of the material Mr. Gray possessed, and the age of the victims depicted, amplify these concerns. Moreover, after execution of the first search warrant and before his detention, Mr. Gray continued to access CSAM and attempted to conceal his activity—conduct the Court characterized as an "extremely aggravating factor." *Id.* at 78:13–14. His post-offense behavior, even in the

18

face of investigation, undermines his assurances of future compliance and underscores his continued dangerousness.

Although Mr. Gray states that he intends to follow all conditions if released, his demonstrated sophistication and willingness to continue offending while under investigation reduce the force of that promise. On balance, the Court concludes that Mr. Gray has not shown by clear and convincing evidence that he would not pose a danger to others or to the community if released. He therefore fails to satisfy the first prong of § 3143(b) as to dangerousness.

Turning to the second prong, the Court concludes Mr. Gray's appeal does not raise a substantial question of law or fact likely to result in reversal or a sentence that excludes imprisonment. The Court is not assessing the likelihood that Mr. Gray will prevail on the issue on appeal. *See United States v. DiMauro*, 614 F. Supp. 461, 465 (D. Me. 1985). Rather, the Court is required to determine whether the issue on appeal is "a close question or one that very well could be decided the other way" and that, if resolved in his favor, is likely to produce one of the outcomes specified in § 3143(b). *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985). Mr. Gray's appeal raises a single issue: whether the Court erred by treating his 2012 conviction as a qualifying sentencing factor—under the statute, the Guidelines, or 18 U.S.C. § 3553(a)(1)—given his collateral challenge to that conviction.

The Government does not seriously dispute that the ultimate legal issue may be close but argues any error would be harmless in light of the sentencing Court's explicit statements regarding its reasons for the sentence imposed. ECF No. 223 at 9. This Court agrees. An alleged sentencing error cannot justify a defendant's release pending appeal where the record shows that the same sentence would have been imposed even absent the alleged error. *See Bayko*, 774 F.2d at 22–23. Here, the sentencing Judge stated: "I believe

19

a ten-year sentence is the right sentence here, and it doesn't matter to me that it was a mandatory minimum or not . . . I would have imposed a ten-year sentence even if there had been no mandatory minimum." EFC No. 168 at 82:8–10. The First Circuit has previously found sentencing errors harmless on numerous occasions based on similar statements from the sentencing Judge. *See, e.g.*, *United States v. Acevedo-Hernández*, 898 F.3d 150, 172 (1st Cir. 2018) (holding an error in guideline calculation harmless where sentencing Judge stated "I would like to make clear that regardless of the application of the guidelines, regardless of whether any other of those adjustments would have been proper . . . [the Court] would have imposed the same sentence that I am imposing here today"); *United States v. Ortiz-Álvarez*, 921 F.3d 313, 319 (1st Cir. 2019) ("The district court's explanation of the reasons for the sixty-month sentence further counters Ortiz-Álvarez's claim of prejudice by making it clear that the judge based the sentence he selected on factors independent of the Guidelines range.") (quotation modified)); *United States v. Ouellette*, 985 F.3d 107, 110 (1st Cir. 2021) ("Because the district court made clear that it would have imposed the same sentence regardless of the Guidelines, any alleged error . . . is harmless.").

Given the sentencing Judge's explicit statements, any potential error in using the 2012 conviction as an enhancing factor would likely not result in reversal, a non-custodial sentence, or a shorter term of imprisonment than Mr. Gray currently is serving. Mr. Gray therefore has not carried his burden under the second prong of § 3143(b).

Even assuming Mr. Gray could satisfy both prongs of 18 U.S.C. § 3143(b), he has not shown "exceptional reasons" under 18 U.S.C. § 3145(c) that would make his continued detention inappropriate. He offers no evidence, much less a clear showing, that his

circumstances are so unusual as to warrant departure from the default rule of detention following conviction and sentence.

For these reasons, the Court concludes Mr. Gray has not met his burden for release pending appeal and **DENIES** his Motion for Release Pending Appeal. ECF No. 207.

## VII. *Cok* Warning

This Order has demonstrated the breadth and the duplicative nature of Mr. Gray's filings over the past few months. This continuous stream of motions and responses hinders the Court's ability to resolve his requests for relief and places an undue burden on the docket. The First Circuit has made clear that trial courts "plainly possess discretionary powers to regulate the conduct of abusive litigants." *Cok v. Fam. Ct. of R.I.*, 985 F.2d 32, 34 (1st Cir. 1993).

In accordance with *Cok*, this Order serves as formal notice that filing restrictions are imminent if Mr. Gray continues his current course of conduct. *Id*. at 35. The Court is prepared to require Mr. Gray to file a "Motion for Leave" before any future documents are accepted for the docket. Such a motion would require Mr. Gray to certify that the filing is:

1) Directly relevant to a matter currently pending before the Court; and

2) Not duplicative of information or arguments already submitted.

If these restrictions are imposed, the Court will review all proffered filings. Only those that are relevant and non-duplicative will be authorized for docketing. Unless Mr. Gray immediately alters his filing practices, these restrictions will be implemented.

## VIII. Conclusion

For the foregoing reasons, the Court **DISMISSES AS MOOT** Mr. Gray's motion for order of relief to supplement the record on appeal, motions to extend time to reply, and motion for leave to file. ECF Nos. 205, 218, 242, 259. The Court also **DENIES** Mr.

Gray's motions for appointment of counsel, motions for oral argument, motion for release pending appeal and reduction of sentence, motions for protective orders to seal, and motions for discovery. ECF Nos. 204, 206, 207, 212, 214, 215, 216, 226, 232, 233, 234, 239, 243, 244, 250, 252, 257, 263, 264, 265.

Finally, the Court **DENIES** without prejudice Mr. Gray's Motion for Compassionate Release. ECF No. 203. Mr. Gray may refile upon resolution of his pending appeal before the First Circuit. However, the Court warns Mr. Gray that if he continues filing duplicative motions he may be subject to *Cok* filing restrictions.

**SO ORDERED.**

Dated this 3rd day of April, 2026.

/s/ Stacey D. Neumann

**UNITED STATES DISTRICT JUDGE**